Comstock v. The State.

CHARLES P. COMSTOCK, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Continuance:** AFFIDAVIT FOR. Where an affidavit for a continuance of a case is based upon information derived from others, it should give their names and whereabouts, and also sufficient reason for not procuring their own affidavits to the facts communicated, which should be done if possible.

2. **Evidence:** WITNESS—COMPETENCY OF. A child may be a competent witness to testify to the fact of his parentage.

3. **Rape:** EMISSION. To establish the crime of rape evidence of emission is not necessary; emission is presumed from the fact of penetration.

4. **Instructions.** Where the instructions given to the jury are as favorable for the prisoner as those requested, a refusal is not error.

5. ———: RAPE. On the trial of an indictment for rape, the refusal to instruct the jury that the failure of the prosecution to call expert testimony to the fact of penetration weakens other competent evidence on that point—there being nothing to show that such testimony was available, and in fairness ought to have been produced—is not error.

6. **Prisoner as Witness.** The fact that a prisoner does not testify in his own behalf will not operate to his disadvantage; but if he testify, and fail to controvert in any way what has been said by witnesses against him, concerning a fact within his own personal knowledge, it will be taken as an admission that their testimony is true.

THIS was an indictment for rape committed upon one Coral Comstock, daughter of the defendant. The trial below before POST, J., in the district court for York county, resulted in a verdict of guilty, and sentence of prisoner to imprisonment in penitentiary for life, to reverse which he prosecuted this writ of error.

*O. P. Mason, George B. France,* and *Sedgwick & Powers,* for plaintiff in error.

Affidavits for continuance were sufficient. *Jameson v. Butler,* 1 Neb., 118. *Johnson v. Dinsmore,* 11 Neb., 393.

*Williams v. The State*, 6 Neb., 337.    The evidence as to parentage was inadmissible.    1 Greenleaf, sec. 103.    There must be both penetration and emission.    Russell on Crimes, 685, note.    *Rex v. Russell*, 1 M. & R., 122.    *Williams v. The State*, 14 Ohio, 226.    *Blackburn v. The State*, 22 Ohio State, 110.    Warren's Ohio Criminal Code, 250.    Prosecutrix must appear to have resisted to the full extent of her ability.    *Oleson v. The State*, 11 Neb., 276.

*C. J. Dilworth, Attorney-General,* for the State.

LAKE, CH. J.

A large number of errors are assigned, but we shall consider only those which are referred to by counsel for the prisoner in their brief.

The first of these is a refusal of the court to grant a continuance on account of absent witnesses.    There was no error in the ruling of the court on this question.    The affidavit on which the motion to continue was based was clearly insufficient, according to the most approved rule of criminal practice in such cases.

The affidavit was that of the prisoner himself.    All but two of the witnesses desired were non-residents of the state, and their whereabouts unknown to affiant, except that he had been recently "informed," but by whom he does not say, that they were somewhere in the states of Illinois and Michigan.    The two witnesses in this state resided, as affiant "learned," about a week before, in Harlan county, but from whom he learned this, or whether the information was credible, does not appear.

When an affidavit for continuance is based upon information derived from others, it should give their names and whereabouts, and also sufficient reason for not procuring their own affidavits to the facts communicated, which should be done if possible.    Being at least but hearsay testimony, the greatest particularity is due to the court, and

must be observed.　The motion for a continuance was properly overruled.　*Williams v. State*, 6 Neb., 334.

The next objection is to the ruling of the court on the admission of evidence.　The prosecuting witness was asked what relation she bore to the prisoner, and answered that she was his daughter.　It is claimed that this was incompetent testimony, for the reason that the fact of her parentage was one of which necessarily she could know nothing except as hearsay.

We do not regard this objection as sound.　It is certainly competent for one who, from his earliest recollection, has been a member of one's family, given his name, and reared in the belief, and in all ways given to understand that he is a son in the household, to testify of his parentage.　His testimony may not be satisfactory or conclusive of the fact, but it is at least admissible for what it is worth in the minds of the jury, and clearly sufficient to make a *prima facie* case, thus throwing the burden of overcoming it upon him who controverts it.　To so rear a child, is in the nature of an admission of parentage, and should be so regarded.

The next question was raised by an exception to an instruction given to the jury, by which they were told that the prosecution was not " required to prove emission" to make out the crime of rape.

By our statute rape consists of the " *carnal knowledge*" of a woman, "*forcibly and against her will.*"　Of the proof of " carnal knowledge, " Greenleaf in his work on Evidence, vol. 3, § 210, says:　" It was formerly held, though with considerable conflict of opinion, that there must be evidence both of penetration and injection.　But the doubts on this subject were put at rest in England by the statute of Geo. IV., c. 31, which enacted that the former of the two acts was sufficient to constitute the offense.　Statutes to the same effect have been passed in some of the United States.　But as the essence of the crime consists in the violence done to the person of the sufferer, and to her sense of honor and

virtue, these statutes are to be regarded merely as declaratory of the common law, as it has been held by the most eminent judges and jurists both in England and in this country." And this we take to be the more safe and reasonable rule, and the one supported by the greater weight of authorities. Emission is presumed from the fact of actual penetration.

Error is also assigned upon the refusal of the court to give several instructions requested on behalf of the prisoner. In the action of the court in this particular, we see nothing to complain of. The first of these requests was that: "In order to make a case against defendant, all material matters must be proved beyond a reasonable doubt." This was followed by the designation of two matters only which were material to guilt, viz., penetration, and that the prosecuting witness was the daughter of the prisoner.

To simply say to a jury that "all material matters must be proved beyond a reasonable doubt," without also advising them what the "material matters" of the case are, can aid them but little if any in reaching a safe conclusion, and is no better than saying to them that, before they can convict, they must be satisfied of the prisoner's guilt beyond a reasonable doubt. Looking to the instructions which were given, we find that upon all of the matters referred to in those refused as material, the jury were expressly told they must be satisfied from the evidence, beyond a reasonable doubt, or they must acquit. This is true of the essential facts of penetration and relationship between the prosecuting witness and the prisoner, in addition to which it was, in general terms, more than once impressed upon the attention of the jury that "The state must establish his guilt beyond a reasonable doubt," before they could convict. The instructions actually given were certainly as favorable to the prisoner as those refused, and where this is the case the refusal to give those requested is not error.

Another instruction refused was as follows: "The fact that the prosecution have not called a physician, or expert,

to the fact of penetration of the person of the prosecuting witness, Coral Comstock, weakens the evidence of the prosecution in regard to the fact of penetration. "

This was rightfully refused. The testimony to the fact of penetration offered by the prosecution was ample, and left no room for doubting that it took place. This testimony was confined to that of the prosecuting witness herself, very fully corroborated by that of her older sister, to whom she exhibited herself soon after the occurrence, with her clothing stained with blood from her private parts. This testimony we will not repeat, but it seems straightforward, and bears ample evidence of being entirely truthful. Besides, although the prisoner availed himself of the privilege of being a witness in his own behalf, and testified, he did not offer in a single particular to controvert what his daughters had sworn to respecting the fact of carnal connection. Had he not gone upon the witness stand, the fact of his not testifying against them would not have operated to his disadvantage, but having done so, his failure to deny what they said respecting a matter which must have been within his own personal knowledge, will be taken as an admission that it was true. Under these circumstances the testimony of the prosecuting witness needed no support from physicians or experts.

If it had been shown that a physician was called to attend upon the prosecuting witness at the time of this occurrence, who had made an examination of her private parts, and the fact of penetration were at all doubtful, the failure to produce such professional testimony might be an important circumstance for the jury to consider in favor of the prisoner. The instruction, however, was entirely inapplicable here, and there was no error in refusing it.

This disposes of all questions urged by counsel upon our attention, and finding no error respecting them we must affirm the judgment.

JUDGMENT AFFIRMED.