FRANK HELDT, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law**: CONFESSIONS AS EVIDENCE. Where a detective in the guise of a friend induced a suspected party to make a confession of a crime without inducements of any kind except at his request, he said that he had consulted an attorney for the prisoner who said "he (the prisoner) had better tell the facts of the case, and that they would be likely to do him as much good as anything he could do; that there was no use lying about it, and he had better tell the truth," *Held*, 1, That the alleged confession was admissible in evidence; 2, That the credibility of a witness, who by deceit, misrepresentation, and other dis-

creditable means has obtained an alleged confession from a pris-
oner is for the jury, who should be specially instructed on that
point.

2. ———: REASONABLE DOUBT. An instruction that persons some-
times say they are morally certain of the existence of a fact or
facts, but have not the evidence to prove it, this—is the condi-
tion of mind one is in when convinced beyond a reasonable doubt,
is erroneous.

3.——— : ALLEGATIONS UNCONTRADICTED NOT REGARDED AS
PROVED. Where the defendant in a criminal case has pleaded
not guilty, the jury, in order to convict him of the offense charged,
must find from the evidence that he is guilty, and the court has
no authority to say to them that certain allegations are uncon-
tradicted, and therefore may be by the jury considered as proved.
The credibility of the witnesses must be submitted to the jury.

4. Instructions: EXCEPTIONS. Instructions must be excepted
to in order to obtain a review of them in the supreme court.

5. Criminal Law: EVIDENCE OF ACCUSED: ARGUMENT OF
PROSECUTOR. If a person accused of crime testifies in his own
behalf he is to be treated as any other witness, and if he fails to
deny a material fact which has been testified against him, the
district attorney may comment upon such omission in his argu-
ment to the jury.

ERROR to the district court for Colfax county. Tried
below before TIFFANY, J., sitting for POST, J.

*J. W. Brown,* for plaintiff in error.

*William Leese, Attorney General,* for defendant in error.

MAXWELL, CH. J.

The plaintiff was indicted by the grand jury of Colfax
county for wilfully, unlawfully, and feloniously placing
railroad ties on the Union Pacific railway track to obstruct
the same, and was found guilty and sentenced to imprison-
ment in the penitentiary for ten years. The errors assigned
will be noted in their order.

1. That the court erred in admitting the testimony of

one Tuffield as to an alleged confession made by the plaintiff to him.  His testimony is as follows:

"I am a detective, I was with the defendant Heldt at Neligh's office in Omaha.  Heldt was under arrest.  I was supposed to be under arrest too.

"I proposed to go and see an attorney.  I let on I was going to see an attorney, and I went to see my brother.  I returned to Neligh's office, from there they took me to jail; Heldt had gone to jail before me; we were put in the same cell together.  I talked to Heldt in the jail.  I told him that I had seen an attorney and I would be very likely to be let out to-morrow ; I could be out as soon as they got to Schuyler and found out what I had been doing, that my character was here, and that I would see an attorney as soon as I got back.  Heldt asked me if I had seen an attorney.  I said yes, and told Heldt what he had said in regard to him, and I told Heldt that the lawyer said he had better tell the facts of the case, and that would be likely to do him as much good as anything he could do ; that there was no use lying about it, and he had better tell the truth.  Heldt said he would, but he did not know how to go at it, or get it out to his lawyer.  I said it would be easy enough done, and finally he asked me where he could get some paper.  I said he could easy get it if he rattled the jailer, and he did call him, and the jailor came after a bit.  Joseph Miller was the jailer.  I went and got the paper.  I said I would like to telephone to Judge Bennett.  I wanted to telephone to other parties, but I found I could not, and when I got back I said I could not do it as there was no connection, but I took the paper back for him to write on, and when he got the paper he said, what did I think was the first thing for him to put in it?  And I said I could not tell him; that I did not know anything about it; that I was innocent.  He said, yes, I know you are innocent.  I told him to tell the truth, and he said that as soon as he started to talk they

would let me go. And he went on and started it, and he wanted to know how to finish it, but I believe he knew then that I was not a very good scholar, and could not have done it if I had tried, so he just finished it himself. I believe he wrote Judge Bennett's name on the outside, and he wanted to know how he could send it, and I said, rattle up the jailer again, and he did and handed it to him. He wrote it up against the cell wall. (Here exhibit D was shown to the witness.) Yes, sir, this is the paper, but there is something here that I do not think he put on himself. I saw it, but I could not tell what was on it; whether it was Judge Bennett, or what it was; he handed it to Mr. Miller, the jailer; he gave me another one when he had written that. I asked him, I said : as you have made up your mind to confess this, and if your wife knows anything about it you had better write and tell her what you are going to do, so as there would be no mistake; and he said he would write and tell her he was going away for a day or two, and that would be an excuse for him not coming home. Then he wrote this paper, marked exhibit C. He remained in jail until Monday morning. This was Saturday night about six o'clock, I should judge, on the 22d. He staid there until Monday, that would be the 24th. Then he was brought to Schuyler on the train."

Exhibit D is as follows:

"OMAHA, Nov. 22d, '84.

"Regarding this wrecking affair, would say that I had no intentiong to hurt either human beings or to damage any property, but took especial pains to have the train notified in time to prevent all accidents. My object being to get into the good graces of the railroad company and thereby get a job, which I was in need of, as I could find nothing else to do, and I am willing to swear to the foregoing confession.

"FRANK HELDT."

Written below the confession is the following:

" Received this letter from Frank Heldt in county jail Nov. 22, '84, 8 P.M.

" J. S. MILLER."

This letter seems to have been open, but was addressed to " Judge Bennett, Omaha, Neb."

The rule is well settled that a promise of benefit or favor, or a threat or intimation of disfavor connected with the subject of the charge, held out by a person having authority in the matter will be sufficient to exclude a confession made in consequence of such inducement either of hope or fear. *R. v. Morton*, 2 Mo. & R., 514. *R. v. Swatkins*, 4 C. & P., 548. *R. v. Mills*, 6 C. & P., 146. *R. v. Shepherd*, 7 C. & P., 579. *R. v. Enoch*, 5 C. & P., 539. But mere advice to tell the truth, where there is neither a threat or an inducement, is not sufficient to render the confession inadmissble. To be admissible, however, it must appear that the confession was entirely voluntary. The necessity for this rule is very clearly stated in *State v. Fields*, Pecks. Rep., 140, that " the evidence of such confessions is liable to a thousand abuses. They are made by persons generally under arrest, in great agitation and distress, when each ray of hope is eagerly caught at, and frequently under the delusion, though not expressed, that the merit of a disclosure will be productive of personal safety. To disclose the confession is odious as a breach of confidence; which it is at all times. The confession is made in want of advisers, under circumstances of desertion by the world, in chains and degradation, with spirits sunk, fear predominant, hope fluttering around, persons and views momentarily changing, a thousand plans alternating, a soul tortured with anguish, and difficulties gathering into a multitude—how easy it is for the hearer to take one word for another, or to take a word in a sense not intended by the speaker. And for want of an exact representation of the tone of voice, emphasis, countenance, eye, manner, and action of the one who made the confession, how almost impossible

is it to make a third person understand the exact state of his mind and meaning. For these reasons such evidence is received with great distrust and under apprehensions of the wrong it may do. Its admissibility is made to depend on its being free of the suspicion that it was obtained by any threats of severity or promises of favor, and of every influence, even the minutest."

The plaintiff testified in his own behalf, and his testimony, if true, shows that Tuffield had been in his company at Schuyler for several days, and that they were on very intimate terms, and frequently visited some of the saloons of that place; that the plaintiff regarded him as a friend, and did not suspect that he was a spy upon his actions.

A man who will deliberately ingratiate himself into the confidence of another for the purpose of betraying that confidence, and while with words of friendship upon his lips seeks by every means in his power to obtain an admission which can be tortured into a confession of guilt, which he may blazon to the world as a means to accomplish the downfall of one for whom he professes great friendship, cannot be possessed of a very high sense of honor or of moral obligation. Hence the law looks with suspicion on the testimony of such witnesses, and the jury should be specially instructed that in weighing their testimony greater care is to be exercised than in the case of witnesses wholly disinterested. *Preuet v. People*, 5 Neb., 377. The weight to be given to such evidence is a question for the jury and cannot be urged against its admissibility.

The confession, however, seems to have been voluntary, although made to one who deliberately and repeatedly deceived and made false statements to the plaintiff to obtain it. It is doubtful if anything is really gained in the administration of the law from the admission of such testimony, and the consequent encouragement of the courts of the practice. If it is answered that confessions are thus ob-

tained which otherwise could not be had, it may be said in reply that the same is true of the rack and wheel by means of which confessions were formerly forced from its victims, but which experience showed were entirely unreliable. So far as appears, the plaintiff confided in this man as his friend and was betrayed by this professed benefactor. The testimony of such a man may be entitled to but very little credence, yet it must be submitted to the jury. The first objection, therefore, is untenable.

2.   The court, among other instructions, gave the following :

"3d.   You are instructed that it is incumbent upon the state to prove beyond a reasonable doubt every material allegation of the indictment, and in this case the material allegations are that the Union Pacific railroad was a railroad in operation in the county of Colfax on the 28th day of October, 1884, an obstruction was placed upon the track of the said railroad, as charged in the indictment, and that the obstruction on the track was wilfully and maliciously placed there by the defendant, Frank Heldt. The first two allegations are uncontradicted, and therefore may be by the jury considered as proved.

"4th.   You are instructed, therefore, that in this case the only material allegation to which you need direct your attention, and the truth of which you must be satisfied beyond a reasonable doubt before you can find the defendant guilty, is, did the defendant wilfully and maliciously place the obstruction upon the track, as alleged?

"5th.   You are instructed that by reasonable doubt is meant such a doubt as naturally arises in the mind of the jury, after a careful consideration of all the evidence, and from the evidence a doubt which the juror can give a good and valid reason for having. It is not a mere idle, unreasonoble doubt which the juror may conjure up in his mind, and for which he can give no satisfactory reason. Persons sometimes say they are morally certain of the existence

of a fact or facts, but have not the evidence to prove it. This is the condition of mind one is in when convinced beyond a reasonable doubt. It is a moral conviction of the truth of the allegation."

It is said in the 5th instruction that "persons sometimes say they are morally certain of the existence of a fact or facts, but have not the evidence to prove it. This is the condition of mind one is in when convinced beyond a reasonable doubt." Just what is meant by these words is not entirely certain; but it is reasonable to suppose that the jury considered them to mean that if the jury were morally certain of the guilt of the accused, even without evidence to prove it, they might find him guilty. In other words, that suspicion might supply the place of evidence. The principle is firmly imbedded in the common law, that in circumstantial evidence each essential link in the chain of circumstances necessary to establish the guilty of the accused must be proved to such a degree of certainty as to convince the jury beyond a reasonable doubt. *Webster v. Com.*, 5 Mass., 317–318. This rule is necessary for the protection of the innocent, and should not be infringed upon nor in the least degree abated. The instruction in question was calculated to, and no doubt did, mislead the jury, and for that reason the judgment must be reversed.

The third instruction is also objectionable. In a criminal case, on a plea of not guilty, the court cannot assume that any fact necessary to establish the guilt of the accused has been proved, and so relieve the jury from its consideration. The evidence is to be submitted to the jury, and *they* are to say from the testimony before them what facts are proved, and what not proved. Even where there is no conflict in the testimony, the jury are the judges of the credibility of the witnesses, and may entirely discredit such testimony as to them may seem unworthy of belief. The court therefore erred in giving this instruction; but as no exception was taken, it will not form the basis of proceedings in error.

3d. The plaintiff testifies as a witness in his own behalf very fully, and denied making the alleged confessions. He did not, however, deny that he had committed the offense with which he was charged. The district attorney, in his argument to the jury, commented upon this omission, and this is now assigned for error. This question was before this court in *Comstock v. State*, 14 Neb., 205, and it was held that where a prisoner testifies in his own behalf, and fails to controvert what has been said by witnesses against him concerning a fact within his own personal knowledge, it is in the nature of an admission of the truth of such fact. The failure to controvert such fact may no doubt be open to explanation. The general rule is that if the accused testifies as a witness he is to be treated as any other witness. *Boyle v. State*, 5 N. E. Rep., 203. *Thomas v. State*, 2 Id., 808. *Com. v. Nichols*, 114 Mass., 285. *State v. Ober*, 52 N. H., 459; S. C. 13 Am., 88. *Connors v. People*, 50 N. Y., 240. There was no error, therefore, in the comments of the district attorney.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.