Miller v. State.

—————

WILLIAM MILLER, ALIAS WILLIAM CARSON, v. STATE OF NEBRASKA.

[FILED APRIL 30, 1890.]

1. **Murder:** A PROSECUTION for murder may be by information filed by the public prosecutor.

2. ———: THE INFORMATION in the case *held* sufficient to sustain a conviction of murder in the first degree.

3. ———: CONTINUANCE: ABSENCE OF WITNESSES. Where a motion for a continuance of a criminal case made by the accused, on account of the absence of a witness, is supported by affidavits stating what the witness would testify to if present, and it ap-

pearing that such testimony is material, that reasonable diligence has been used to procure the same, and that there is a probability of obtaining such testimony by the next term of court, *held*, the continuance should be granted.

4. ———: ———: COUNTER-AFFIDAVITS cannot be used on the hearing of such a motion.

5. ———: ———: INFORMATION: NAMES INDORSED ON, AFTER FILING. The names of additional witnesses may, in the discretion of the trial court, be indorsed on an information after the filing thereof and before the day of trial. Where the name of a witness is indorsed on the day of trial, but not called and examined, error cannot be based thereon.

6. ———: MOTIONS HEARD IN ABSENCE OF PRISONER. It is not error to hear arguments in the absence of the accused, on motions and demurrers, before the commencement of the trial.

7. ———: JURORS: BIAS. When a person called to serve as a juror in a criminal case discloses on his *voir dire* that he has an opinion as to the guilt or innocence of the accused based on rumor and the reading of newspaper accounts of the alleged crime, which will require evidence to remove, a challenge for cause should be sustained, even though he states that he thinks he could render an impartial verdict under the law and evidence. (*Curry v. State*, 4 Neb., 548.)

8. ———: INSTRUCTIONS. No prejudicial error was committed in refusing the defendant's request on the presumption of innocence as the law on that subject had already been correctly stated in the instructions given.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*A. Hazlett*, and *R. S. Bibb*, for plaintiff in error, cited as to indorsement of names on information: *Gandy v. State*, 24 Neb., 723; *Stevens v. State*, 19 Id., 648; *Parks v. State*, 20 Id., 516. Bias of jurors: *Curry v. State*, 4 Neb., 548; *Cowan v. State*, 22 Id., 523; *Thurman v. State*, 27 Id.; 628; *State v. Miller*, 29 Kan., 44. Counter-affidavits: *Gandy v. State*, 27 Neb., 707; *Williams v. State* 6 Id., 334; *Hair v. State*, 14 Id., 503; *Johnson v. Dinsmore*, 11 Id., 391. Continuance: Maxwell, Crim. Pro., p. 568, and cita-

Miller v. State.

tions.    As to the instruction set out in the opinion: *Long v. State*, 23 Neb., 33; *Walbridge v. State*, 13 Id., 238; *Garrison v. People*, 6 Id., 275 ; 1 Greenleaf, Ev., sec. 34.

*William Leese, Attorney General*, and *Hugh J. Dobbs*, *contra*, cited as to absence of prisoner during hearing of motions: *People v. Vail*, 6 Abb., N. C. [N. Y.], 206 ; *Epps v. State*, 102 Ind., 539; *Territory v. Gay*, 2 Dak., 125. Counter-affidavits: *People v. Cleveland*, 49 Cal., 577; *People v. Lewis*, 64 Id., 401; *Stewart v. State*, 58 Ga., 577; *Horn v. State*, 62 Id., 362; *Murry v. State*, 1 Tex. App., 178 ; *Rucker v. State*, 7 Id., 559; *Strickland v. State*, 13 Id., 364; *Hyde v. State*, 16 Tex., 445, and cases; Maxwell, Crim. Pro., 563; *Polin v. State*, 14 Neb., 540 ; *White v. Commonwealth*, 80 Ky., 480.    Challenge of jurors: Crim. Code, sec. 468; *Murphy v. State*, 15 Neb., 383; *Marion v. State*, 20 Id., 233; *Phelps v. People*, 72 N. Y., 334; *Balbo v. People*, 80 Id., 484; *Cox v. People*, Id., 500; *Cooper v. State*, 16 O. St., 328; *State v. Wilson*, 38 Conn., 126; *Reynolds v. U. S.*, 98 U. S., 145; *Spies v. People*, 123 U. S., 131.

NORVAL, J.

At the June term, 1889, of the district court of Gage county, the plaintiff in error was convicted of murder in the first degree and was sentenced to be hanged.    The petition in error contains fifty-eight assignments of error, of which twenty-nine are relied upon in the brief.    In our view it will not be necessary to notice all of these.

Exception is taken to the overruling of the demurrer to the information.    No defect is pointed out and we are satisfied that none exists.    It clearly and concisely states all the facts necessary to charge the crime of murder in the first degree.    The intent is specifically alleged.

A general demurrer to the defendant's plea in abatement was sustained and an exception entered upon the record.

The plea assigns three reasons why the prosecution should be abated:

First—Because no indictment has been found against the defendant by any grand jury of Gage county.

Second—Because the right of trial by jury, guaranteed by the constitution of the state of Nebraska, has been abridged by the failure of a proper presentment of the case to a grand jury.

Third—Because the court has no jurisdiction to try the defendant on the information filed in the action.

The authority to prosecute criminal cases on information filed by the public prosecutor cannot well be questioned. This power is expressly conferred by chapter LIV of the Criminal Code. Of course, unless the accused is a fugitive from justice an information cannot be filed until the accused has had a preliminary examination or he has waived his right thereto. It is not claimed that there has been no examination in this case, or at least that it was not waived. The power of the legislature to provide for prosecutions by information is expressly conferred by the last clause of sec. 10 of the Bill of Rights, which declares: "That the legislature may, by law, provide for holding persons to answer for criminal offenses on information of a public prosecutor; and may, by law, abolish, limit, change, amend, or otherwise regulate the grand jury system." The prosecution by information does not in any manner abridge the right of trial by jury, guaranteed by the constitution. The examination by a grand jury of a criminal offense is in no sense a trial. The demurrer to the plea in abatement was therefore rightly sustained.

It is urged that the trial court erred in hearing the motion to quash the information, the demurrer to the information, the plea in abatement, and the motion for a continuance, in the absence of the defendant from the court room. Sec. 464 of the Criminal Code provides that "No person indicted for a felony shall be tried unless personally

present during the trial." Sec. 11 of the Bill of Rights provides: " In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel," etc. We do not believe that either of the above quoted sections have reference to the presentation by counsel of questions of law to the court or interlocutory proceedings prior to the commencement of the selection of the jury, but rather that the accused shall be present during the trial of the issue of fact raised by his plea of not guilty. The hearing of motions and demurrers prior to choosing the jury is no part of the trial. This construction is not without precedents to sustain it. *Epps v. The State,* 102 Ind., 542, was a prosecution and conviction for murder. A motion to quash the indictment was partly argued in the absence of the defendant. The statute of that state provides that " No person prosecuted for any offense punishable by death, or by confinement in the state prison or county jail, shall be tried unless personally present during the trial." The court in that case held that the section had no relation to motions in a cause not connected with the trial. (See *Territory v. Gay,* 2 Dak., 125.) It was held in *Boswell v. Commonwealth,* 20 Gratt., 860, under a statute which provides that a person tried for a felony shall be personally present during the trial, that any order may be made in the prisoner's absence, before his arraignment. It has been held that the accused has no right to be personally present at the hearing of a motion for a new trial. (*People v. Ormsby,* 48 Mich., 494; *Commonwealth v. Costello,* 121 Mass., 371.) We conclude that there was no error committed in hearing, in the absence of the defendant, these motions and demurrers.

The defendant, before the commencement of the trial, presented to the court an application for a continuance, supported by affidavits. The state having filed several affidavits in opposition to the motion, the defendant asked that they be stricken from the files, which request was

denied, and the counter-affidavits were considered on the hearing of the motion for a continuance. The right of the state to make a counter showing on the hearing of such a motion has been more than once considered by this court, and such right has been invariably denied. In passing upon the question in the case of *Hair v. State*, 14 Neb., 503, this language is used: "The facts stated in the affidavit, for the purposes of the motion, will be taken as true, and if sufficient grounds are shown, and reasonable diligence has been used by the party filing the motion, a continuance should be granted. The court will not permit to be filed, nor consider counter-affidavits in such case, because it will not in that proceeding permit an issue to be raised as to the truthfulness of the affidavit." To the same effect are *Williams v. State*, 6 Neb., 334, *Johnson v. Dinsmore*, 11 Id., 391, and *Gandy v. State*, 27 Neb., 707.

It is contended by the state that the counter-affidavits filed by it raise no issue as to the truthfulness of the showing made by the defendant. If not, we fail to see what bearing they could have upon the determination of the application for a continuance. True, they do not contradict the showing of the defendant as to what the absent witness, if present, would testify to, yet they seek to raise an issue as to the probability of the defendant being able to procure the testimony of the absent witness, and to that extent, at least, the defendant's showing is sought to be weakened. If the defendant's affidavit can be contradicted in one respect, why not in all others. While the courts of some of the states permit counter-affidavits to be considered on an application for a continuance, yet we see no good reason for changing the rule so long adhered to in this state.

Did the defendant make a sufficient showing of diligence, was the testimony of the absent witness material, and was there a probability that the testimony could be procured? It appears from the affidavits accompanying the motion for

a continuance that a day or two after the killing, the defendant, for his own personal safety, was taken out of the jail at Beatrice by the sheriff of Gage county and placed in the jail at Lincoln, where he remained until nine days before the trial; that by reason thereof he was unable to consult or communicate with his attorneys or make preparations for trial. The defendant was without means, the court assigning counsel to defend him. That one Samuel Holton was present at the time and place the offense is alleged to have been committed and saw the shooting; that said Holton, if present, would testify that the defendant did not fire the fatal shot, but that the same was fired by another person; that the deceased was several hundred feet east of the dance hall when shot, and that at that time the accused was in the back part of the dance hall, where it was absolutely impossible for him to have fired the shot, and that no other witness is known by whom the same facts can be proven. Holton left the city of Beatrice shortly after the killing, without the defendant's knowledge, and that numerous letters were addressed to Holton to Atchison, Horton, and Topeka, Kansas, and to St. Joseph and Kansas City, Missouri, the places where he had formerly resided, but received no information as to his whereabouts, until within three days prior to the filing of the motion for a continuance, when it was learned that the witness was near Fargo, Dakota, and that it was expected that his testimony could be procured by the next term of the district court.

Immediately after pleading to the information a subpœna was issued for said Holton, which was returned by the sheriff not found. The state claimed that the deceased was shot in the dance hall. The importance of the testimony of Holton is apparent. It was very material to the defense to show that some one other than the defendant took the life of the deceased. There is a reasonable showing of diligence. The defendant was in jail and could do nothing towards procuring testimony. He had no means to

employ others to do so.   Counsel were not assigned until
a few days before the trial.   He had to rely entirely upon
the efforts of volunteers.   While it is important that every
person accused of a crime should be given a speedy trial,
it is likewise important that the accused should have a
reasonable opportunity to procure necessary witnesses for
his defense in order that he may have a fair hearing.  Upon
the showing made we are unanimously of the opinion that
the court erred in not granting a continuance.

The county attorney was permitted to indorse the names
of several witnesses upon the information the day prior to
the commencement of the trial.   Counsel for the defend-
ant made no objection at the time to the indorsement of
the names or to the witnesses testifying whose names were
thus indorsed.    Besides, additional names in the discretion
of the court may be indorsed on an information before the
day of trial.   The name of Willis Ball was placed on the
information on the day of trial, but as he was not exam-
ined as a witness, the defendant was not prejudiced thereby.

The next objection made is to the overruling of the de-
fendant's challenges for cause of several jurors.   We have
with care read the *voir dire* examination of the jurors com-
plained of, and find that all except Garrison and Steel were
competent jurors.   The examination of Garrison discloses
that he had an opinion as to the guilt or innocence of the
accused, based on rumor and on reading newspaper accounts
of the murder.   He was then asked by the defendant's
counsel the following questions :

Q. Will it not require some testimony to remove that
opinion you formed as to the guilt or innocence of the de-
fendant, to remove it from your mind?

A. Yes, it would take some evidence.

Q. Then you could not sit in this jury box and com-
mence at the beginning of the trial of this case without
having some testimony to remove the bias and prejudice
against this defendant, or in his favor; ·is that not so?

A. Yes, I would have to have some testimony.

Q. By the COURT: Notwithstanding any opinion you have formed, could you give this defendant a fair and impartial trial upon the law and evidence?

A. I can.

Q. When you speak about testimony to remove your opinion, what does that mean—you have got a fixed opinion and it would depend upon whether the facts turned out in the testimony as the rumor was?

A. The rumor would have to be sworn to.

Q. Well, would what you have heard influence you in considering the testimony that comes from the witnesses?

A. Yes, it would have to come from the opposite side.

Q. Would you consider the testimony the same as if you had not heard anything about it.

A. Oh yes, I would consider the testimony the same.

It is obvious that under the rule laid down by this court in numerous cases Garrison was not a competent juror. While he doubtless believed he could hear the testimony and render an impartial verdict, his present opinion, that would have to be overcome with testimony, would prevent him from doing so.    The juror Steel was also disqualified. He had an opinion that would require evidence to remove. On being interrogated by the court whether, notwithstanding the opinion he had formed, he could give the defendant a fair and impartial trial, he answered, "I *think* I can." The defendant was required to excuse Garrison and Steel peremptorily, and thereby exhausted all his challenges. This was prejudicial error. (*Curry v. State*, 4 Neb., 548; *Cowan v. State*, 22 Id., 519; *Olive v. State*, 11 Id., 11.)

Exceptions were taken to the giving and refusing of certain instructions.    Six instructions were given on request of the state, twenty-five that were asked by the defendant and eighteen on the court's own motion, making in all forty-nine.    The instructions are too voluminous to copy into this opinion.    The general charge of the court was in most respects favorable to the defendant.

The following request of the defendant was refused: "The court further instructs the jury that the law presumes every one innocent, and this legal presumption of innocence is a matter of evidence, to the benefit of which the party accused is entitled. The burden of proof is on the state to satisfy the jury of his guilt beyond all reasonable doubt. Even if the defendant introduces no evidence at all to overcome or explain that against him, the jury should acquit him, unless the evidence introduced by the state satisfies you beyond a reasonable doubt that he is guilty as charged in the information." This request was doubtless copied from an instruction approved by this court in *Long v. State,* 23 Neb., 33. In determining whether the defendant was prejudiced by the refusal of the court to give the above request to the jury, we should look to the instructions of the court and ascertain whether the substance of the request had not already been given. The jury were told in the third instruction requested by the defendant "that in this case, the law raises no presumption against the prisoner, but every presumption of the law is in favor of his innocence, and in order to convict him of the crime alleged in the indictment, every material fact necessary to constitute such crime must be proven beyond a reasonable doubt, and if the jury entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the prisoner the benefit of such doubt and acquit him." The same in substance was repeated in several other instructions. The substance of the request complained of was given in the other instructions requested by the defendant, and he was therefore not prejudiced by the denial of his request.

As there must be a new trial, we decline to discuss the evidence. Many of the other errors assigned are not likely to occur upon another trial, and it will be unnecessary to consider them here.

For the errors already pointed out the judgment of the

district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.