NEBRASKA MOLINE PLOW COMPANY V. FRED FUEHRING.

FILED NOVEMBER 4, 1897.   No. 7514.

1. Attachment: DISSOLUTION: EVIDENCE: ATTORNEYS. In view of the fact that the names of certain attorneys at law do not appear in the record as attorneys for either party, and of the further fact that there was direct, positive testimony by one of the attorneys that neither of them was an attorney for the plaintiff until long after the commencement of the action in which an attachment issued, no presumption founded upon unsatisfactory circumstantial evidence will be entertained to avoid the effect of such testimony in order that there may be justified the dissolution of the attachment issued at the commencement of the suit by virtue of which such alleged attorneys were garnished as debtors of the attachment defendant.

2. ———: AMBIGUOUS AFFIDAVITS: CONSTRUCTION. In affidavits drawn by counsel for one of the parties litigant, language which is ambiguous in its nature will be construed most strongly against the party in whose behalf such affidavits were prepared.

3. ———: FRAUDULENT CONVEYANCES: EVIDENCE. Where an attachment was issued on the ground, among others, that the defendant had disposed of his property in whole or in part with intent to defraud his creditors, and, in resistance of a motion to discharge the attachment there was undisputed proof of admissions by the attachment defendant that he had made such a transfer of the nature charged that no execution against him could be collected, *held*, that there exists no reason for assuming that the transfer must have been made subsequent to the commencement of the attachment suit in view of the fact that the attachment defendant himself placed no such limitation on his own admissions of the fraudulent transfer in question.

ERROR from the district court of Seward county. Tried below before BATES, J.   *Reversed.*

*George W. Lowley* and *D. C. McKillip*, for plaintiff in error.

*Biggs & Thomas, contra.*

RYAN, C.

On March 9, 1894, plaintiff began this action in the district court of Seward county for the recovery of a judgment against the defendant in error in the sum of $1,226.15, with interest. There was filed on the date above mentioned an affidavit for an attachment, in which some of the grounds stated were that the defendant "has property and rights which he fraudulently conceals; has assigned, removed, or disposed of his property, or is about to assign, remove, or dispose of his property, or a part thereof, with intent to defraud his creditors." In this affidavit it was stated that the affiant believed that R. S. Norval and B. S. Norval had property or money of the defendant in their possession, and were indebted to him in the sum of more than $1,500. On the same day the parties last named were garnished and required to answer on May 7, 1894. The money which the answer of the garnishees showed that they had in their possession came into their possession in another matter, in which the garnishees acted as attorneys at law in making a collection for Fuehring. On April 17, 1894, there was filed a motion to discharge the attachment in this case, for the reason that "the statement of facts in the affidavit for attachment therein set forth is untrue." On September 7, 1895, there was filed another motion for the discharge of the attachment, for the alleged reason that the garnishees, at the time of the filing of the motion, and when they obtained the money from defendant which was sought to be garnished, were the attorneys for the defendant. On the hearing of this last motion there were attempts to prove that the garnishees had made inquiries into matters which might tend to show that some of the alleged grounds for an attachment existed, and that some of the affidavits to sustain the attachment had been corrected by one of the garnishees at the suggestion of the affiants therein, respectively, to express the intention of such affiant, and before such person acting as notary

public had been sworn to. R. S. Norval was sworn on behalf of the defendant and testified that neither of the garnishees had been an attorney in this case until January 23, 1895, and the record fails to show that they acted in that capacity at any time. As there was no sufficient evidence to sustain the contention that they were attorneys in this case when they were garnished, we feel bound to assume that in that capacity they were not then connected with or concerned in it.

By his motion the defendant put in issue the averment that he had property and rights which he fraudulently concealed, and had assigned, removed, and disposed of his property, or had been about to assign, remove, and dispose of his property to defraud his creditors. To disprove the defendant's fraudulent disposition of his property, consummated or contemplated, there were filed by him the affidavits of ten persons, in all respects alike in the particulars now to be considered. In each affidavit the affiant stated: "That to affiant's personal knowledge the defendant, Fred Fuehring, is not removing his property, or any part thereof, out of the jurisdiction of this court, and especially that he is not removing any property with the intent of defrauding his creditors, or any of them. * * * Affiant further states that to his knowledge the defendant, Fuehring, has no property or rights in action which he conceals, and that he has not assigned, removed, or disposed of, nor is he about to assign, remove, or dispose of, his property, or any part thereof, with the intent to defraud his creditors." The ambiguity of the above quoted language, in so far as it relates to personal knowledge, is apparent when the first few words of the sentence are rearranged, thus: "Affiant further states that defendant Fuehring has no property or rights which he conceals, to affiant's personal knowledge," etc. As this language occurs in each of the several affidavits, this language might mean that affiant knew that the defendant had not concealed any of his property or credits, or it may be understood to mean that if the defendant had so disposed of his rights or credits, that fact was unknown

to the affiant, in each instance. As these affidavits were sworn to before one of the attorneys of the defendant, acting as a notary public, and as so many were in the same language, it is not unfair to assume that the language criticised was chosen by counsel rather than by numerous affiants making distinct affidavits. There is, therefore, no good reason why this language should not be used most strongly against the person in whose behalf it was employed, and so construed it is very inconclusive in its effect. There are some portions of these affidavits, as well as some other entire affidavits, which contain statements contradictory of the allegations of the affidavit for an attachment; but as these relate to matters as to which the admissions of the defendant, rather than the conclusions of third parties in respect thereto, must in their nature be most satisfactory, we shall resort to the latter rather than the former in the determination of this vital question.

The defendant and plaintiff, by a contract in writing dated February 7, 1893, entered into an arrangement whereby the former became the agent of the latter for the sale of agricultural implements at Goehner. It was under this arrangement that the defendant became indebted to the plaintiff in the sum for the recovery of which this action was instituted. To induce the plaintiff to employ defendant as its said agent, the latter made to the former a written statement of his assets and liabilities, as follows:

"ASSETS.

| | | |
|---|---:|---:|
| Amount of book accounts considered good... | $500 | 00 |
| Amount of notes considered good.......... | 1,000 | 00 |
| Cash on hand and in bank................. | 200 | 00 |
| 160 acres of improved land in Seward Co., Neb., all in my name.................... | 6,400 | 00 |
| Grain: Corn......... ........... $1,000 00 | | |
| Wheat .................. 400 00 | | |
| Live stock: Horses and hogs...... 500 00 | | |
| | 1,900 | 00 |
| Total assets........................... | $10,000 | 00 |

LIABILITIES.

For mortgage or deed of trust on houses, land:

  Land ....................... $1,800 00

For money borrowed, not secured:

  I'll settle to-morrow........... 1,000 00

  For exemption under the state

    law ..................... 2,000 00

  Total liabilities...................... $4,800 00

  Total assets........................... $10,000 00

  Worth above all indebtedness and exemp-

    tion ............................. $5,200 00"

It was shown that, without question, the land of Fuehring had been sold before the commencement of this action for $7,050, and that the proceeds of this sale, except the amount in the hands of the garnishees, had been used to pay debts owing by Fuehring. By the affidavit of W. H. De Bolt it was shown that on November 11, 1893, De Bolt, as agent of the Badger Lumber Company, had sold to Fuehring a lumber yard of that company for $2,503.28. This yard was at Goehner. H. N. Coleman, B. F. Norval, and H. W. Harvey, in their respective affidavits introduced on the hearing of the motion to discharge the attachment, stated that on December 13, 1894, Fuehring said in their presence that it would not do any good for Pelky, a client of the Norvals, who held a judgment against Fuehring, to take out an execution thereon, as he (Fuehring) had fixed his property in such a way that nothing could be collected from him; that upon being asked who owned the property at Goehner, defendant Fuehring answered, "That's all right; I've got it fixed so that nobody can get a hold of it;" and that Fuehring furthermore said that he was merely running the business. In each of the affidavits just referred to, and also in one made by R. S. Norval, it was stated that on January 2, 1895, the defendant Fuehring had said that the sheriff had been down to Goehner with an execution on the Pelky judgment; that the stock of lumber and machinery of which

the defendant was in charge at that place had been mort-
gaged by the defendant to the S. K. Martin Lumber Com-
pany for either $2,000 or $2,500, and that defendant had
nothing with which to pay said execution, and was not
worth anything; that upon being told that there was no
chattel mortgage such as he had described on record, de-
fendant said he would go and see Mr. De Bolt, the man-
ager of the S. K. Martin Lumber Company at Seward,
and have him put the chattel mortgage on record. In
respect to the execution on the judgment in favor of Pelky
against Fuehring, the sheriff of Seward county made affi-
davit that about January 2, 1895, having learned that
Fuehring claimed to have made a chattel mortgage on
his farm machinery and lumber to the S. K. Mar-
tin Lumber Company, he, the said sheriff, called on W.
H. De Bolt, manager of said company at Seward, and
asked said De Bolt if the lumber company had such a
mortgage, and that De Bolt answered that they had no
chattel mortgage against the lumber or machinery of the
defendant. The sheriff closed this affidavit with the fol-
lowing language: "And affiant further states that defend-
ant Fred Fuehring said he had no property and was not
worth a dollar, in a conversation Fuehring had with R. S.
Norval in his office on the 2d day of January, 1895, and I
have been unable to find any property whereon to levy
said execution." In view of the denial of the existence
of a chattel mortgage of Fuehring to the lumber com-
pany, it is somewhat strange that we find in the record
a copy of a chattel mortgage on the lumber and ma-
chinery of Fuehring to the lumber company, dated April
11, 1894. This mortgage was witnessed by E. C. Biggs,
one of the defendant's attorneys, and was filed for record
at 5:30 o'clock P. M. of January 7, 1895, the day on which
were filed the last above described affidavits of R. S.
Norval, B. F. Norval, H. W. Harvey, and H. N. Coleman.
There is also found in the record another copy of a mort-
gage of Fuehring to the S. K. Martin Lumber Company,
dated January 8, 1895, the execution of which was wit-

nessed by W. H. De Bolt.   This describes paints, paint-
ers' material, and a certain mare.   Neither the mortgagor
nor Mr. De Bolt, the manager of the lumber company,
nor Mr. Biggs, the witness of the mortgage of date April
11, 1894, made any explanation or statement as to the
circumstances surrounding the execution of that mort-
gage.   Under ordinary circumstances this might not have
been required; but we think, in view of the denial of the
existence of the mortgage dated April 11, 1894, it would
have been highly proper to have shown by direct evi-
dence, as an independent fact, when that mortgage was
made and the circumstances surrounding the execution
of it.   This omission, however, we do not regard as being
important in the same degree as the circumstances which
we shall now refer to.

In December, 1894, and in January, 1895, it has been
shown that Fuehring said that he had nothing, and that
nothing could be collected on an execution against him.
In addition to this, the affidavit of the sheriff discloses
that in fact in January, 1895, Fuehring had no property
on which the sheriff could levy an execution.   It is, to say
the least, a little singular that on May 24, 1894, Fuehr-
ing's affidavit was filed in this case, in which affidavit
there was the following language: "Affiant avers that he
was considerably enraged at plaintiff's conduct in bring-
ing this suit and attaching, and especially when the plain-
tiff already held notes of the affiant at least nearly, if not
entirely, equal to the amount of the affiant's indebtedness
to plaintiff; and the affiant says that while so enraged
he may have made some remarks from which the plaintiff
could construe an intent to make them trouble in the
collection of their claim, but affiant avers that he has
never wronged any one nor defrauded them out of a cent,
and never at any time intended to defraud plaintiff out of
anything rightfully due them, and never said he would do
so."   *   *   By Fuehring's own statement he was shown
on February 7, 1893, to have been the owner of property
to the value of $5,200 in excess of all his indebtedness and

the exemptions allowed by law. In December, 1894, and January, 1895, without contradiction on his part, he is shown to have said that he had nothing; that nothing could be collected on an execution against him; and these statements are supplemented by the testimony of the sheriff that as a matter of fact he had been unable to find any of defendant's property whereon to levy an execution. It might seem quite plausible to argue that these statements of Fuehring were made long after the attachment had issued, and therefore could not have induced plaintiff to cause it to issue. But the language of Fuehring did not disclose when the disposition of his property had taken place. His statement was, in effect, that he had, at some indefinite time in the past, made a fraudulent transfer of his property, and that as a consequence of this transfer nothing could be collected of him on execution. The language which has been quoted from the affidavit of Mr. Fuehring filed May 24, 1894, discloses, moreover, that at some time previous to that date Fuehring, under provocation, "may have made remarks from which plaintiff could construe an intent to make them trouble in the collection of their claim." With this admission in evidence, the probability that the admitted transfer to hinder creditors in the collection of their debts from Fuehring was made anterior to the commencement of this attachment became much stronger than it would be considered solely on the statements made on and just previous to January 2, 1895. The inquiry on the motion to discharge the attachment was as to whether or not the grounds upon which the attachment had issued in fact existed when the affidavit for the attachment was filed. To entitle Fuehring to the benefit of a presumption that his admittedly fraudulent transfer had been subsequent to the date of the issue of the attachment, we must supplement his statement with the assumption that these statements referred to acts which must have been done between March 9, 1894, and May 24, immediately thereafter. If this was true it lay within the power of the de-

fendant to show it affirmatively, and this at his peril he was required to do. A principle akin to this was applied in *Comstock v. State*, 14 Neb., 205, and in *Heldt v. State*, 20 Neb., 492. In view of the failure of Fuehring to show affirmatively that his confessedly fraudulent transfer had no existence anterior to the suing out of the attachment in this case, we think that the assumption must be that, consistently with the truth, such a limitation upon his admissions was impossible. The order by which the attachment in this case was vacated is therefore reversed and the attachment is reinstated, and this cause is remanded to the district court for further proceedings in conformity with the views hereinbefore expressed.

REVERSED AND REMANDED.

- NORVAL, J., not sitting.