## COURT OF APPEALS,
### April 27, 1909.

## THE PEOPLE v. WILLIAM SCOTT.

### (195 N. Y. 224.)

(1). MURDER—SUFFICIENCY OF EVIDENCE.

> The question of the prisoner's responsibility was submitted to a jury and the verdict rendered was to the effect that he knew the nature and quality of his act and that it was wrong. The verdict held to be amply sustained by the evidence and approved.

(2). SAME—CONFESSION ADMISSIBLE ALTHOUGH OBTAINED BY DECEIT OF PRIVATE PERSON.

> Where a confession is obtained from a prisoner by a private person under a promise that he will aid the prisoner to escape, no stipulation or agreement being made by any public officer to discharge the defendant and not place him upon trial or any understanding had by defendant to that effect, the confession, although induced by deception, is properly received in evidence. *People v. White*, 176 N. Y. 331, approved and followed.

APPEAL from a judgment of the Supreme Court, rendered May 5, 1908, at a Trial Term for the county of Chenango upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Hubert C. Stratton* and *William H. Sullivan,* for appellant. The alleged confession of the defendant was made by reason of a stipulation or agreement of the district attorney, made through and by the witness Harrington, who represented such district attorney, and the same was procured by threats, promises, improper means and influence, and should have been excluded under section 395 of the Code of Criminal Procedure. 6 Am. & Eng. Ency. of Law, 521, 525, 527; *Hendrickson v. People,* 10 N. Y. 13; *People v. McMahon,* 15 N. Y. 384; *People v.*

*Wentz,* 37 N. Y. 303; *Teachout v. People,* 41 N. Y. 7; *Murphy v. People,* 63 N. Y. 590; *Cox v. People,* 80 N. Y. 500; *People v. McGloin,* 91 N. Y. 241; *People v. Mondon,* 103 N. Y. 218; *People v. Chapleau,* 121 N. Y. 266; *People v. Kennedy,* 159 N. Y. 346. The defendant in this case was a lunatic or an imbecile as defined by sections 20 and 21 of the Penal Code, and the verdict of the jury upon these propositions was clearly against the weight of evidence. *People v. Barber,* 115 N. Y. 475; *People v. Burgess,* 153 N. Y. 564; *People v. Ferraro,* 161 N. Y. 376; *People v. Krist,* 168 N. Y. 30.

*James P. Hill,* for respondent. The confession proved to have been made to the witness Stephen E. Harrington was competent and admissible under section 395 of the Code of Criminal Procedure. *People v. White,* 176 N. Y. 331; *People v. Wentz,* 37 N. Y. 303; *People v. Mondon,* 103 N. Y. 598; *People v. Kennedy,* 159 N. Y. 346; *Cox v. People,* 80 N. Y. 484; *People v. Chapleau,* 121 N. Y. 275; *Murphy v. People,* 63 N. Y. 590; *People v. Corey,* 148 N. Y. 500; *People v. Meyer,* 162 N. Y. 366; *People v. Cassidy,* 133 N. Y. 612. The defendant was not insane or laboring under such a defect of reason as to be excused from criminal liability under the provisions of sections 20 and 21 of the Penal Code. *People v. Ferraro,* 161 N. Y. 376; *People v. Krist,* 168 N. Y. 299; *People v. Burgess,* 153 N. Y. 569; *People v. Furlong,* 187 N. Y. 198; *People v. Rogers,* 192 N. Y. 333; *People v. Silverman,* 181 N. Y. 235; *People v. Taylor,* 138 N. Y. 398.

HAIGHT, J.:

On the 18th day of October, 1907, the defendant, William Scott, induced his stepmother, Delia Scott, to accompany him to Chenango lake for the purpose of inspecting a stove which he contemplated purchasing. His father, James C. Scott, resided at Norwich, a few miles from the lake, and he supplied

them with a covered buggy and a mustang pony with which to make the trip. The defendant drove to a cottage, known as the Borland cottage, near the lake, where his parents formerly resided. He then led the horse back through the field, Mrs. Scott walking behind the buggy until they reached the heavy woods. A while afterwards the defendant returned with the horse and buggy alone. Several persons saw him and Mrs. Scott going to the lake, and he was also observed by several returning alon. Thereafter and on the 23d day of October the body of Mrs. Scott was found in the woods, and upon the inquest it was determined that the cause of death was a pistol shot, the bullet penetrating the back of the neck, passing through the spinal column between the first and second vertebrae of the spine, severing the cord and passing out through the roof of the mouth on the left side of the face under the cheek bone or molar prominence.

No question is raised with reference to the fact that the defendant committed the act charged against him. The defense interposed was that he was a lunatic or an imbecile within the provisions of sections 20 and 21 of the Penal Code, in that he was laboring under such a defect of reason as not to know the nature and quality of the act he was doing, or not to know that it was wrong. Upon this branch of the case many witnesses were sworn, disclosing the history of the defendant from infancy. At the time of the committing of the act he was twenty-three or twenty-four years of age. He had defective vision from birth. He attended school when a child and could read and write fairly well. In his early teens he developed a passion for appropriating the property of others and was committed to the industrial school at Rochester, where he appears to have spent several years. After he was released therefrom he again indulged his propensity and was again convicted of larceny and sent to the Elmira Reformatory, from which place he was released only a few months before the commission of the crime in

question. The evidence tends to show that he was a man of low order of intellect, somewhat brutal in the treatment of the animals under his charge, such as horses and cows, and that he possessed a great passion for women and to some extent had indulged in self-abuse. The question of his responsibility was submitted to the jury and the verdict rendered was to the effect that he knew the nature and quality of his act and that it was wrong. Our conclusion, after a careful examination of the case, is that the verdict is amply sustained by the evidence and should be approved.

There is only one question of law presented for our consideration. It appears that a suspicion had arisen in the village that a crime had been committed by the defendant and he had been arrested and locked up in jail. There had, however, been no discovery of the body of Mrs. Scott. Searches had been made for it, but unsuccessfully. One Harrington, a neighbor and acquaintance of the family, had spent the day at the lake looking for the body and had then returned and gone to the jail to visit the defendant. He appears to have conceived a scheme to induce the defendant to disclose the whereabouts of the body. He, therefore, upon visiting the defendant, said to him, in substance, that he was sorry to see him there in jail and that if he was a boy of his he would like to see him get free; that they were going to get out a big party on the morrow and were going to hunt the woods, and if they should find Mrs. Scott it wouldd go hard with him. He then disclosed to him his scheme, which was, in substance, that he would get the sheriff to let the defendant go with him to the woods to look for the body, that he would have him hand-cuffed to himself and he would keep the key so that when they found the body, he, Harrington, could unlock the handcuffs and let the defendant run away. He promised to procure some provision and get him some money so that he could escape and avoid re-arrest. The defendant asked Harrington to come in and see him the next morning. He did so and then the de-

24

fendant agreed to go with him and point out the body. Harrington then went to see the sheriff to get the permit. The sheriff expressed a doubt as to whether he would be justified in letting him take the defendant out of the jail and suggested that they should go and see the district attorney in reference to it. . Then Harrington and the sheriff went to the district attorney's office and had a talk with him, and Harrington told him his scheme. The district attorney replied, saying: "I do not believe you can do any such thing. If you can it is all right." They then returned to the jail and the sheriff procured a conveyance, the defendant and Harrington were handcuffed together and taken by the sheriff and an assistant to the Borland cottage. In the meantime Harrington had procured some food which was shown to the defendant and fifty cents in money, which was given him. Before arriving at the cottage they had stopped the team and allowed the defendant and Harrington to get out, at which time Harrington took out his key and unlocked the handcuff and then relocked it again as they re-entered the carriage, so as to let the defendant understand that he had the key. The key, however, was transferred to the sheriff in exchange for another without its being observed by the defendant. On arriving at the cottage Harrington and the defendant were allowed to leave the carriage and walk into the woods, the sheriff and his assistant going around in another direction so as not to be seen by the defendant, but intending to keep them within call. The defendant conducted Harrington into the woods at the point where the body lay and pointed the same out to him, after which he demanded his release. Harrington produced a key, but the handcuffs could not be unlocked by it; whereupon the defendant charged Harrington with being a traitor. Shortly after, they were joined by the sheriff and his companion. On their way into the woods Harrington drew from the defendant further details as to the manner in which the crime was committed, which it is not necessary here to rehearse. The defendant's counsel strongly insisted upon the trial that

the confessions of the defendant were induced upon the promise of freedom and that they were not admissible in evidence.

Section 395 of the Code of Criminal Procedure provides that "A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor; but is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed." The question here presented has reference to the provision of the Code pertaining to a stipulation of the district attorney. It often occurs in the prosecution of criminals that the district attorney is compelled to allow one or more persons charged with crime to give evidence on behalf of the State. When this is done under a stipulation of the district attorney that the person so giving evidence shall not be prosecuted therefor, it becomes binding, and the confession cannot thereafter be used against him; but that it not this case. The defendant was not informed that Harrington or the sheriff had had any conversation with the district attorney upon the subject, or that he had entered into any stipulation or made any promise to the defendant; he had not, in fact. The most that possibly could be claimed from the interview with the district attorney is that he assented to the deception that was proposed to be practiced upon the defendant in order to induce him to point out the locality of the body. There was no agreement to discharge the defendant and not place him upon trial, nor did the defendant so understand, for he supposed that Harrington was going to unlock his handcuff upon his disclosing the location of the body and allow him to escape in the woods, thus deceiving the sheriff and preventing the district attorney from placing him upon trial. Neither the sheriff nor the district attorney, as public officers, had any right to consent to the defendant's discharge under such circumstances. Indeed, had they so agreed, they themselves would

have violated their duties as officers. We are not now called upon to discuss the morality of the deception that was practiced upon the defendant in this case. We are merely called upon to determine whether the confessions made were properly received in evidence. Such deceptions have been indulged in from time to time in numerous cases, but our attention has been called to no case where the courts have gone to the extent of excluding them, unless they were procured by threats, were involuntary or made under promise of the district attorney that the statement should not be used against the defendant. Where, therefore, an under-sheriff, pretending to be a friend of the prisoner charged with murder, entered into a scheme with him to take the decedent's pocket-book and put it into the room of another person, and then by finding it there charge the crime on to that person, and in order to do so the defendant was induced to conduct the sheriff to the place where he had hidden the pocketbook, the evidence was held competent. *People v. White,* 176 N. Y. 331, 349, 17 Crim. Rep. 538. In that case it was said by VANN, J., writing for the court, that "Confessions induced by the use of decoy letters, by the false assertion that some of the accomplices of the prisoner were in custody, or made to a detective disguised as a confederate, or upon the promise that they will not be disclosed, have been received in evidence with the sanction of courts of high authority." (Citing authorities upon the subject.) The question was carefully considered in that case, and we think the conclusion reached is controlling upon the question now presented. We are, therefore, of the opinion that no error was committed in admitting the evidence objected to.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment of conviction affirmed.