**UNITED STATES**

v.

**Donald CARTLEDGE, 279 62 8912 Private (E–1) U. S. Marine Corps.**

**NCM 74 2257.**

U. S. Navy Court of Military Review.

Sentence adjudged 25 June 1974.

Decided 17 Sept. 1975.

LT Walter A. Smith, Jr., JAGC, USNR, Appellate Defense Counsel.

1st LT Ronald J. Waicukauski, USMCR, Appellate Government Counsel.

Before WRAY, LAPPIN and FULTON, JJ.

## DECISION

LAPPIN, Judge:

The appellant was tried by a general court-martial composed of a military judge sitting alone. Contrary to his pleas, he was convicted of wrongfully offering to sell Tetrahydrocannabinols (THC) and Lysergic Acid Diethylamide (LSD), wrongful possession of Phencyclidine (PCP) and LSD, and a 44 day unauthorized absence, in violation of Articles 92 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 886, respectively. The military judge sentenced appellant to be confined at hard labor for four months, to forfeit all pay and allowances, and a dishonorable discharge. The convening authority approved the findings and sentence.

The appellant assigns three errors before this Court. Both appellate government counsel and appellate defense counsel filed comprehensive and professionally excellent briefs covering the assigned errors. Considering each assigned error seriatim, we find the assignments to be without merit.

I

APPELLANT'S CONVICTIONS FOR ALL SPECIFICATIONS UNDER THE ADDITIONAL CHARGE ARE BASED ON EVIDENCE OBTAINED FROM HIM IN VIOLATION OF HIS ARTICLE 31 RIGHTS.

The testimony of record indicates that on 14 April 1974, Private Michael C. Hertel, USMC, of the Medical Rehabilitation Platoon, MCRD, San Diego, and a friend of his, one Private McLendon, stopped in the vicinity of Building Four, MCRD, on their way back from sickbay and talked to Private Donald Cartledge, USMC, the appellant in this case. Appellant asked Hertel and McLendon if they wanted to buy any drugs. Private McLendon said that he did and "bought a hit of THC" from appellant for $10.00. (R. 13).

The next day, 15 April 1974, Private McLendon wanted to purchase some more drugs. Accompanied again by Private Hertel he proceeded to appellant's quarters in Building Four. Appellant had a "lid of marijuana" on hand and sold it to Private McLendon. Also observed in appellant's possession at this time was a bottle of pills which appellant said were THC. (R. 14).

On the following day Private Hertel, among others, was questioned regarding drug usage by Staff Sergeant Ronald L. Rader, USMC, a criminal investigator assigned to the Criminal Investigation Department. Private Hertel related his knowledge of the drug sales by appellant on 14 and 15 April. Private Hertel advised the sergeant that he did not know the appellant's name but described him as "About a medium height, black person, sir, and medium built, sir. No watches or scars, or anything to that sort that this private could see, sir." In much of his testimony Private Hertel referred to himself as "this private." Sergeant Rader told Private Hertel ". . . to go over to Building Four, and find out the private's name, what rack he slept in, what building it was specifically, sir. And find out if he had any drugs for sale, and what kind of drugs they were, sir." (R. 16).

Private Hertel continued his testimony as follows:

"Q. Alright, what did you do when you left the office?

A. This private walked straight from CID's office up to Building Four, sir.

Q. The same building where you saw the defendant before?

A. Yes, sir.

Q. And what exactly happened when you got to the building?

A. The private knocked on the door, sir, and Private CARTLEDGE answers up, sir. These two privates walked inside, sir. This private found out his name and found out that he had some drugs to sell, sir. Told Private CARTLEDGE that he might be back later on to buy some, sir.

Q. Alright now, I want you to tell the military judge exactly what Private CARTLEDGE showed you.

A. Sir, he showed me seven hits of purple haze, sir, and a hit of THC, sir.

TC: If I might, Your Honor, at this time, if I might just request a brief recess, as I have to get some evidence right outside.

MJ: Very well.

TC: Are we in recess or just waiting?

MJ: We were just waiting for you to come back.

TC: Thank you, your Honor.

Alright, now Private HERTEL, I want to go back now to what you were shown by Private CARTLEDGE. I'd like these marked Prosecution Exhibits next in order, please. Make them two separate exhibits, please.

(Reporter marked Prosecution Exhibits 2 and 3, for identification.)

Q. Okay, let's back up for one moment, and lets take it again, from when you just stepped inside and went up to Private CARTLEDGE'S rack?

Q. [sic] Yes, sir. Private found out that Private CARTLEDGE did have some drugs to sell, sir.

Q. What did he tell you he had?

A. He said he had some purple haze, sir, and some THC, sir.

Q. Okay, and was any price quoted?

A. Yes, sir.

Q. And what was the price?

A. $2.50 for the purple haze, sir, and $10.00 for the hit of THC, sir.

Q. Okay. When if ever did you see any drugs at that time?

A. Sir, right after I asked him the price quote, sir.

Q. What did he do?

A. He showed the private the drugs, sir.

Q. The hit of THC, and the tablets of purple haze?

A. Yes, sir.

Q. Is it your understanding—what is purple haze?

A. LSD, sir." (R. 16, 17).

Private Hertel immediately returned to CID and advised Sergeant Rader what had transpired. No objection to the above testimony was raised by the defense during the course of the trial.

Appellant now contends that Private Hertel was acting as a CID informant when the above transpired, was therefore required to give the appellant an Article 31, 10 U.S.C. § 831 warning, and his failure to do so renders the testimony inadmissible. Government counsel agrees that Private Hertel was acting as an "undercover agent," but argues that under the circumstances no Article 31 was necessary. We agree with the government's position. (*See* United States v. Gibson, 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954) and *United States v. Hinkson*, 17 U.S.C.M.A. 126, 37 C.M.R. 390 (1967).

As in *Gibson*, in the case *sub judice*, the appellant was unaware of Private Hertel's connection with the authorities, and his incriminating statements and actions were made in the course of what on its face was an ordinary conversation. No question of coercion, unlawful influence, or unlawful inducement is present.

Chief Judge Quinn, writing for the Court in *Gibson*, observed that under circumstances similar to the above:

"There remains to be considered, then, only whether the deceit practiced by Ferguson and the agents of the Division in concealing Ferguson's official position, requires the exclusion of the statement. Upon this point, civilian courts appear to be unanimous in holding that fraud or deceit negatives admissibility only when the nature of the fraud or deceit is calculated to elicit an untrue statement. Thus, it has been held that a detective may be placed in confinement with another for the sole purpose of gaining his confidence and obtaining incriminating statements. The ruse, while frequently deprecated by the courts, is nonetheless permitted. *People v. Lipsczinska*, 212 Mich. 484, 180 N.W. 617, 622; *Burton v. State*, 107 Ala. 108, 18 So. 284; *State v. Brooks*, 92 Mo. 542, 5 S.W. 257, 330; *Heldt v. State*, 20 Neb. 492, 30 N.W. 626; *Commonwealth v. Flood*, 152 Mass. 529, 25 N.E. 971; *People v. Scott*, 195 N.Y. 224, 88 N.E. 35.

There is nothing in the history of Article 31(b) which calls for a conclusion at variance with the results obtaining in civilian jurisdictions.

We conclude from the foregoing that the provisions of Article 31(b), supra, do not apply to this situation. It follows that the confessions were properly before the court despite the absence of a preliminary warning." [3 U.S.C.M.A. at 753, 14 C.M.R. at 171].

In the later case of *United States v. Hinkson, supra,* which also involved the question of the admissibility of statements made to an undercover agent without an Article 31(b) warning, Chief Judge Quinn, writing for the majority stated:

"Long ago we held that the Article 31 requirement that an accused or suspect not be interrogated or requested to make a statement without first being advised of his right to remain silent, does not apply to an undercover agent who merely engages in ordinary conversation with an unwary suspect. *United States v. Gibson,* 3 U.S.C.M.A. 746, 14 C.M.R. 164. Similarly, the Supreme Court of the United States has determined that conversations between a suspect and a person secretly cooperating with the police do

not violate the Fifth Amendment's prohibition against compulsory self-incrimination. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966). The record before us demonstrates that no promise, direct or implied, was made to the accused that he could converse with Sasso in confidence. Cf. *United States v. Green,* 15 U.S.C.M.A. 300, 35 C.M.R. 272." [17 U.S.C.M.A. at 127, 37 C.M.R. at 391].

We find the above cited cases to be fully dispositive of the assignment of error.

## II

APPELLANT'S CONVICTIONS UNDER THE ADDITIONAL CHARGE, SPECIFICATIONS 3 AND 4, ARE, IN ANY EVENT, THE PRODUCT OF AN UNLAWFUL SEARCH AND SEIZURE.

The record of trial indicates that after Private Hertel advised Sergeant Rader of his conversation with the appellant, the sergeant asked Private Hertel if he "would point Private Cartledge out" (R. 19). Private Hertel agreed and both departed the CID building. Private Hertel noticed the appellant standing in "formation," and pointed him out to the sergeant. The appellant was apprehended and searched. The controlled drugs which are the subject of this assignment of error were found in the appellant's trouser pocket.

■ Appellant challenges on this review, as he did at trial, the legality of the search. This search was executed incident to appellant's apprehension and as a consequence is unlawful only if the apprehension was unlawful. *Manual for Courts-Martial, United States, 1969* (Revised edition), par. 152. Apprehension of a suspect is authorized under Article 7(b) of the Uniform Code "upon reasonable belief that an offense has been committed and that the person apprehended committed it." Thus, the issue presented by appellant's assignment of error is simply whether Staff Sergeant Rader had a reasonable belief that appellant had committed an offense when he apprehended him.

■ By the time that Staff Sergeant Rader apprehended appellant, he had received substantial evidence of appellant's complicity in several drug-related crimes. Private Hertel had informed him that on 14 April 1974, he had seen appellant sell THC to Private McLendon; that on 15 April 1974 he saw appellant sell "a lid of marijuana" to the same Private McLendon; that also on 15 April, he witnessed appellant in possession of a bottle of pills which appellant had admitted were THC; that on the very day of the apprehension, 17 April 1974, he had seen appellant in possession of both LSD and THC; and that just moments before the apprehension, he had been in appellant's room and was there the recipient of an illegal offer to sell these drugs. That it was appellant who committed these crimes and not someone else was established when Private Hertel pointed him out at the time of apprehension. This detailed information directly related by Private Hertel *as an eye-witness* provided Sergeant Rader, the Government urges, with probable cause to believe that appellant had committed an offense and he could therefore lawfully be apprehended. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) and *United States v. Salatino,* 22 U.S.C.M.A. 530, 48 C.M.R. 15 (1973). We agree with the government's argument.

## III

THE STAFF JUDGE ADVOCATE PREJUDICIALLY MISADVISED THE CONVENING AUTHORITY CONCERNING THE MAXIMUM PERMISSIBLE SENTENCE.

The appellant contends that although the two possessions and two attempted sales may properly be used to support four separate convictions, they should not have been treated as separate for sentencing purposes. The staff judge advocate advised the convening authority that the maximum permissible sentence included nine years confinement, rather than the correct five years. (SJA Review, at 2).

It is to be initially noted that the confinement adjudged at trial was four months, and that prior to the trial *sub judice* the appellant had received four separate nonjudicial punishments for various violations of the Uniform Code of Military Justice.

■ In view of the seriousness of the offenses for which the appellant presently stands convicted, and the matters set forth above we feel there is no fair risk that the convening authority might have reduced the confinement portion of the sentence adjudged below four months if he had been advised that the maximum permissible sentence included five years confinement rather than nine. Since the error is considered harmless, reassessment of the sentence is deemed unnecessary.

The findings and sentence in this case are found to be correct in law and fact. Accordingly, the findings and sentence as approved below are affirmed.

Senior Judge WRAY and Judge FULTON concur.